Good morning, Kara Hartzler, Federal Defenders, on behalf of Mr. Zitlalpopoca. After this court reversed counts 1, 2, and 4, Mr. Zitlalpopoca's correct sentencing guidelines range was 24 to 30 months. But on remand, the District Court imposed three enhancements that created a guidelines range 10 times higher than that, of 21 to 27 years. The largest of these was a 16-level enhancement based on the District Court's finding that Mr. Zitlalpopoca committed sexual abuse under 18 U.S.C. 2242, and that's where I'd like to start. Yeah, that's your big one. That's our big one. Yeah. To impose this sexual abuse enhancement, the government had to show by clear and convincing evidence that Mr. Zitlalpopoca committed the offense by causing Ms. de la Cruz to engage in a sexual act by threatening or placing her in fear. In fear of what? That's the crux of this, Your Honor. I believe that certainly there's a lot of case law to say that that has to be fear of bodily harm. Now, the government is claiming that it can be fear of, for instance, financial harm, and there's just no authority for that. That's a very novel theory that even the government's own unpublished 11th Circuit decision doesn't really support, because if you look at the language of that case, it also actually says fear of bodily harm. Are you talking about U.S. v. Monselv? I am, Your Honor. All right. So, first of all, there's no authority in this circuit to support that. In fact, the authority from this circuit basically says that the touchstone for whether something is causing someone to engage in a sexual act by fear or threatening is did the person, did the victim, give permission for the sexual contact to happen? And the record here unequivocally shows that Ms. de la Cruz gave permission. Now, certainly... Well, you know, you have permission. I'm going to beat the daylights out of you, and you say, well, okay, you can do X. Is that permission? I mean, I'm not sure what you mean by give permission and how permission necessarily obviates fear within the meaning of the guideline. Your Honor, we're not denying that there were domestic violence incidents here, but the only evidence in the record going to the nexus, whether Mr. de la Popoca actually caused her to engage in these acts by force or by threats or placing her in fear, the only evidence going to that is her own testimony. And she denies over and over again that there's any sort of nexus whatsoever between her prostitution and the domestic violence. So you're arguing there needs to be a temporal relationship. In other words, the fear needs to occur immediately followed by the act of prostitution. If you don't do this, engage in this act of prostitution, then I'm going to beat you or assault you or whatever. Well, temporal certainly, Your Honor, but also any nexus whatsoever. I mean, if you look at the record here, Ms. de la Cruz herself testifies, he didn't have to use violence to get me to prostitute myself. You're saying that she was not afraid of him? I'm not saying that she wasn't afraid of him in terms of that sometimes he would use domestic violence against her. I'm saying that the record contains absolutely no indication of any nexus between the domestic violence and the prostitution. She testifies to that over and over. And you can also tell by the fact that the record contains at least three examples of situations where she left. And when she left, he did not threaten her. He did not use violence against her. He said, all right, you can leave. Do you need a ride to the bus station? There was simply not a single incident where there was any mention of prostitution when the domestic violence events occurred. She says over and over, when I fought with him that time, it wasn't because I was working as a prostitute. It was because I found a condom in his wallet. It was because he was late. It was because he was jealous that I was talking to someone else. So the crux of our argument here, Your Honor, is we're not saying that he didn't commit incidents of domestic violence. We're just saying that the only evidence in the record is Ms. de la Cruz's own testimony. And she says unequivocally, and in fact the government acknowledges that she says this unequivocally, that there was no nexus between the domestic violence and the prostitution. So what do you think the base offense level in this case should be? Fourteen. And do you think any of the enhancements that were applied by Judge Benitez should be applied in this case? No, Your Honor. And so you've got a criminal history category of one and a base offense level adjusted offense level of 14. That's right. Do you think that's the appropriate sentencing range here in this case? Well, Your Honor, I'm not saying that the district court doesn't have the discretion to vary up. Certainly the district court has some very strong feelings about this case. But the important thing is that if we start from the right sentencing guidelines range, then if the district court does vary up, then we could do an appeal on the reasonableness of that, and the government would have to show, and the district court would have to show, well, the extent of that, in this case 17-year variance, is justified by the record. And so the court reviews that on a different plane than if he gives a within guidelines sentence. So if it's a base offense level of 14, criminal history category of one, we're looking at a sentencing guideline recommended range of 12 to 18 months. Your Honor, I think there was also an adjustment for roll, an upward adjustment. Two levels there. Exactly. So we're at 16, 21 to 27 months. And I think there was also an extra point added for multiple counts. So the guidelines range that we came out to was 24 to 30. And what was the sentence, 200 and? 162. 162 months. Well, but that adds on the 22, right? That does add on the 22 for the other counts. The sentence we're talking about is the 240. That's correct, Your Honor. That's correct, Your Honor. So even if the court disagrees with me on the plus 16, then let's look at the plus 4 for the 22-41. Now, that's an enhancement where you absolutely have to have serious bodily injury, and we're talking things here about hospitalization, surgery, impairment, and the record here contains absolutely no evidence that there was any evidence. The worst physical injuries that she suffered previously don't amount to that. That's correct, Your Honor. I'm more interested in the vulnerable victim. How do we approach that one? I understand that if we have just a group of people out there, largely undifferentiated, and he succeeds in making one of those people a victim, that person's not a vulnerable victim. But we're looking at an offense that occurred in the United States. That's correct. So do we look at her vulnerability at the time of the offense that's the charge of conviction, or do we look earlier as to whether she was a vulnerable victim when he first recruits her in Mexico? I think either one you look at wouldn't support it. What I'm after is I think by the time she's a prostitute in the United States, she's extremely vulnerable to him. Now, the vulnerability is brought about by him, but she's quite differentiated from the general population at the time of the offense in question. I'm sorry, would Your Honor believe that because of their relationship or because she was in the United States and was undocumented and didn't speak English? All of those things. Okay. The entire package, she's clearly vulnerable to him. Your Honor, the vulnerable victim enhancement, the courts have said that in general when you have trafficking victims, they're almost always going to be people who are undocumented, who have a low education level, who are poor. So in fact, Ms. de la Cruz here actually had more agency than a lot of trafficking victims. She was in a Spanish-speaking area. She had a phone. She knew how to get back to Mexico if she needed to leave. So we believe, Your Honor, that the vulnerable victim enhancement does not apply, but even if the court disagrees, at a minimum, we would argue that the plus 16 and the plus of four don't apply. Was the vulnerable victim enhancement applied at the time of the first sentencing? It didn't appear to me that it was. I believe it was, Your Honor, and I believe this court on the first appeal didn't actually reach it because several of the counts had been reversed. Well, I looked at the pre-sentence investigation report in this case and looked at the calculation that was made by the probation officer in the case, and I didn't see where she had applied a vulnerable victim enhancement. I'm refreshing my recollection. Did the trial judge impose a vulnerable victim enhancement in the first go-around? I believe he did, Your Honor, but I'm happy to check the record and get back to you on that. Check the record and check if you've got the pre-sentence investigation report. I don't see where it was applied at the time of the first sentencing. I can certainly look at that, Your Honor. With the court's permission, I'll save the remainder of my time for rebuttal. Okay, good. Let's hear from the government. Was the vulnerable victim enhancement applied the first time? It's my understanding that it was, Your Honor, because it was specifically at issue on the first appeal, but as my opposing counsel pointed out, this court found no reason to reach that in its disposition of the first sentence. And I know when reviewing the transcript of the second sentencing, Judge Benitez does refer to the fact that he had previously imposed that. I just can't remember. I read the transcript from both sentencings, but I went back and looked at the pre-sentence investigation report, and certainly I don't believe the probation officer recommended it the first time. Fair enough, Your Honor. And I know in the second one, I just reviewed the addendum. There was an addendum filed to the pre-sentence report on March 5, 2013, where the probation officer does agree, at least at the time of the second sentencing. But, Your Honors, the government's position is that there was no reversible guidelines error in this case. As this court is aware, the kind of conduct that can give rise to enhancements for sentencing purposes is broader than what can be found liable for substantive criminal guilt. Would you start with the big one, that is to say the fear? Absolutely. That one, if that's the 2G1.1C1 cross-reference, we will take on the defense's assumption that this has to be physical, a fear of physical harm. But we would point out that the plain language of the statute at 2242 says fear, just any fear, and then in parenthesis, other than death, serious bodily injury, or kidnapping. So our position is, reading that in its plain language, that it's very broad. And, in fact, this court in the United States v. Gavin said that it's a very large range of possible fear, and in the United States v. Archdale said it doesn't even have to be triggered by a threat of force. But in this case, what the government's theory is, this is a factual finding, whether this offense involved conduct that amounted to sexual abuse under 2242. Our theory is that there was a grooming of the defendant. The district court was entitled to find, based on the history of conduct between the defendant and this victim, Ms. Dayla Cruz, that he was using basically equal measures of spice and threats. He both seduced her, they were involved romantically, but then numerous times would engage in this extremely irrational violence when she defied him in even the slightest measure. Numerous times. Three? Three, at least, documented, correct. And that was the three incidents were September 2006, January 2007, and the second one in January 2007. But we would also point out, in the year immediately preceding child three, that's April 2007, April 2008, there was further violence, and that's an excerpt of record, page 167, where Ms. Dayla Cruz testified that, beside those three incidents that Judge Fletcher, that you're referring to, that he continued to hit her, sometimes with the cable, sometimes with the broomstick. And that also happened in that time, right before they came to the United States, there was the incident that Judge Benitez referred to in sentencing when the defendant told Ms. Dayla Cruz about another pimp friend of his who was looking for a woman who had called the police on him because they wanted to beat her or kill her. So that is quite a range of violence. But more importantly, what is the nexus that you need for this 14 to go to a 30 under 2G1.1C1 has to be fear. Ms. Dayla Cruz testified repeatedly that she had a prevailing fear and that it started from the first time he hit her and that it never ended. In fact, an excerpt from record. But would you please address directly the argument we heard that the incidents of violence that she did experience were not in order to force her to be a prostitute. They arose from other causes. She found a condom. She's jealous. She argues. She's talking to somebody at a party, not a man. So there's jealousy. I think she's talking to another woman. So the argument is, well, yes, he would hit her. Yes, he was violent, but it was never violence directed to you. Go out there on the street and be a prostitute or I'll hit you again. That's true. How do you respond to that argument? Well, I don't I don't. We don't deny that. That's true. All those things ostensibly were not about prostitution. But the question is what reasonable inferences can still be drawn. But I think a fair reading of the guideline is fear that coerces the prostitution, not just generic fear. That's the argument. How do you respond to that argument? Well, we're saying here is that it's fear that keeps her employed as a prostitute. I don't know that there's any case that says it literally has to be. I'm going to hit you unless you go to the room right next door and engage in that. What do you make of the evidence that on several occasions she leaves or tries to leave and he does nothing violent? Right. That's true, too. He seduces her back. He sends her a text that he loves her. But, you know, there's also the incident in, I believe, January 2007, where he says, you know, come to Tlaxcala and you won't ever have to work again. And then the minute she shows up at the airport, he says, well, you thought I was going to you were going to have to leave. No, you're going to have to keep working. I mean, it's true. Look, he's a smart pimp, Your Honor. I mean, if he's the kind of pimp that just beats her up repeatedly, leaves her black and blue, that's not going to be very good for business. So what the gunman's position is, this is a little more of a nuanced case. And could Judge Benitez, on clear error of view, finding this is a factual finding, this cross-reference, whether the offense involved conduct that's reached by 2242. That's a broad statement to begin with. And as this Court knows, relevant conduct at sentencing can be broadly construed. Now, the burden of proof on this one is, for you, clear and convincing evidence. Is that right? Correct. And we don't doubt that either. I know there was an issue. I mean, I believe my opponent feels that there's an ambiguity. There's no question about that. Under the law of this circuit, sometimes it's a close case if it increases five levels, six levels, something like that. This is a 16 level increase. The trial prosecutor argued that there was clear and convincing evidence because it's all based on the sworn trial testimony of the victim. And the government's position is, at no point does Judge Benitez indicate that he's applying a preponderance standard. And it's well settled that all it takes is one witness's sworn testimony at trial to sustain a finding of proof beyond a reasonable doubt. So here, Judge Benitez, who presided over the trial, he had evidence from which he could meet that clear and convincing standard. But again, the important thing that we want to point out, I mean, it isn't just that Ms. De La Cruz occasionally said, oh, on that day I was scared, or I was scared for a few months. I mean, in Excerpt of Record 219, after he hit her for the first time, quote, from that point on, I was very scared of him, end quote. And she did not, quote, ever challenge him after that since she feared even worse violence. After that tale in Mexico City where Adrian tells her about a friend, Pimpleton, who's looking for another woman who called the police, she said it scared her enough to not call the police on any occasion. And in fact, even at the time of her arrest, and this is reflected in Excerpt of Record page 184, she's testifying that she's still scared of him. Now, again, this is a nuanced case. You know, this isn't one where it's just violence. This is partial causation. We're not running away from that. Our theory is that he basically, he's enticing her along, he's grooming her. In fact, at the addendum to the PSR that was filed on March 5, 2013, at page 6, even the probation officer says that this defendant, there are no mitigating factors in this case, and that for several years he groomed these victims to eventually bring them to the United States, where obviously the market for prostitution is more remunerative. Okay, let's turn to the vulnerable victim enhancement just for a minute. What was Judge Bonita's basis for applying the vulnerable victim enhancement? Predominantly, from what I review the record, was that she was an undocumented alien. And even at Excerpt of Record, I believe, page 80... Why does that make her any different than... I mean, my assumption here as I look at this is that many, if not the majority of individuals that find themselves in this unfortunate situation are going to be undocumented. Why does that make her any different than others? Well, I think a couple things to bear in mind, Your Honor. First of all, 24-22, it's interstate or foreign commerce, so it's not that it's only limited to victims that travel in foreign commerce. So the fact that somebody is coming from another country is something that already differentiates the case. Now, maybe she's been here before. Maybe she has family here. Those facts weren't true here. And Judge Bonita, you spelled that out on the record. And the other thing is, you know, I know just because my opponent points out that she speaks Spanish, she's in a community where they speak a lot of Spanish. Well, that doesn't necessarily help her with law enforcement. She doesn't know that if she wants to call the police, whether they're going to speak Spanish or not. And I think even at Excerpt of Record, page 80, defense counsel below concedes that the fact that she was undocumented is something that would support a finding of vulnerable victim. But then she goes on to argue that other things outweigh that. Judge Bonita's disagreed. And the other thing that we would point out, and again, because this is a factual finding and it's subject to abusive discretion review, the fact that they were involved in a romantic relationship is certainly something that should be found to independently support this. Because that's something, I mean, you are trading on emotional, I mean, I think he even says at one point, if you love me, you would prostitute for me. Counsel, it looks like Judge Bonita's. His focus here was to create a guideline range and then sentence this defendant at the low end of the guideline range. In fact, I recall during the course of the second sentencing, he miscalculated the guidelines. I don't know who it was that set him straight. And then he came up with a proposed sentence that was at the low end of that guideline range. Then he was corrected. He recalculated the guideline range and then came up at the low end of the new guideline range, which is the sentence that was imposed in this case. That appears to me what he was doing. He wanted to get the sentence within the guideline range. Why didn't he just and of course, who knows what he was thinking? Why didn't he just do an upward variance or employ a departure as opposed to trying to get within a guideline range? Do you know? Well, a couple of things. I think actually, I mean, this was what was recommended by the probation officer the second time around. If you look at the addendum to the pre-sentence investigation report, she calculates a much lower guideline range, but then justifies a higher sentence based on a variance and a departure. Right. He puts all of his eggs in the basket of the guideline range. And so anyway, I'm sorry I interrupted you. Oh, no, no. I mean, that's a fair observation. I would point out that an excerpt of record page eighty five. He makes an alternative finding. I mean, it's true. He wants to. I mean, that is the Supreme Court. They say you've got to at least make a good faith effort to get the guidelines right. You mean he makes the alternative finding that he would have imposed this sentence anyway, regardless of what the guidelines were? Is that the alternative finding that you're referring to? Yeah, but I don't think he says that. And I mean, it's not like a Camarena situation. He specifically says, if you were correct, Miss Morgan, that I should impose a lesser sentence because two or three point one shouldn't be applied. The craft cross reference shouldn't be applied in the victim related adjustment shouldn't be applied. He says this is appalling in his ten years on the benches. It's one of the ten most evil cases he's seen. He specifically says I would have imposed additional time on the remaining counts, but he probably would have imposed the maximum on count three in any event. So he you're saying that was a de facto upward variance. It was his was his secondary position on that. But not so much. Not so much that. But I guess it's more it goes to the harmless error view. Footnote five of the Munoz Camarena opinion says harmless guideline error can be found in numerous situations. And here you actually have to. This was not the first. The second sentence, Judge Benitez, regardless of wanting to ultimately stay in the low end, gave the statutory maximum two hundred forty months, two separate times. And it gave paragraph upon paragraph because this wasn't just the one victim. That's why we have attached the testimony of Mr. Lickstone in our supplemental excerpts of record. He says there's multiple victims. There's a family enterprise going on where you are victimizing 17, 18 year old young women, isolating them in your family's house, telling them they can't leave. They can't call. They can't. He says we have to protect the public. I have to deter. I mean, that's really the final thing I want to leave with this court. I appreciate the extra time. Even if you find guideline error, this is the kind of case where it should be found harmless. Let me. I know we've taken you over time, but I want to address the four level increase based upon fear of the greater bodily harm. Right. Has the physical harm that she has so far been subjected to risen to the level of physical harm that would satisfy that guideline? Our position is yes. If you agree with. So. So how would you characterize the level of physical harm that's required under that guideline? Under one B, one point one comment. Note one definition. All serious bodily injury is defined as including, quote, injury involving extreme physical pain. And then it goes on disjunctively to say, yeah, maybe hospitalization, which my opponent referred to earlier. I would submit that it's at least a reasonable inference. When somebody gets struck in the mouth repeatedly, as happened here, that that involves extreme physical pain. It shouldn't be that a victim has to literally be put in a body cast in a cat in a hospital before this. OK, thank you. Thank you. You save some time now.  So respond as you need to respond. Thank you. I appreciate that. The government discussed relevant conduct and even apart from the nexus, which we argue that there's no nexus here. The court also needs to look at whether this qualifies as relevant conduct. And that's an interpretation of the guidelines. This court reviews de novo. So the government is trying to take you into a clear error standard of review. But we actually believe that this is a legal question because we don't dispute any of the facts in the record. This is a legal interpretation of how you look at relevant conduct. Now, the government's own case in Williams says that relevant conduct can be a factor. Now, are we talking to the big one? We are talking to the big one. You're talking about 1B1.3. But we're just really talking about does she have fear and stay with physical harm? So does she have fear? That's the question. That is the question, Your Honor. What are you talking about when you say prior relevant conduct? Well, Your Honor, this court in its first decision said you can only look at the dates charged in the indictment. That's for the crime. That's not for the guidelines. That's exactly right. So for the guidelines, you look at relevant conduct. No, you look at fear. Was she afraid of physical harm? Relevant conduct allows you to look to conduct that appears to occur before. Anything that would produce fear in her. All right. In any case, Your Honor, I think basically what the government is saying is that the government can speculate and say that he was grooming her, but all the evidence that we have in the record is Ms. De La Cruz's own testimony. He didn't threaten me. He didn't force me. He didn't physically force me to do it. He didn't threaten to hurt me physically if I didn't. He didn't tell me that he would hurt me if I didn't do it. And she says over and over again in the record, I loved him. That's why I agreed to do it. The bottom line, Your Honor, here is that we're not saying that Mr. Zitlobufoka is innocent. And we're not saying that he didn't do some pretty awful stuff. But what we're saying is that when you're looking at increasing the guidelines by 20 years, this can't be on the basis of emotional manipulation. And that goes to your question, I think, Judge Fletcher, is the statute says, did he cause her to engage in a sexual act by threatening or placing her in fear? That by is the nexus. And nothing in the record shows that that nexus is there because all we have is Ms. De La Cruz's testimony. And she says unequivocally that it did not. Okay. Thank you. Both sides for good arguments. Thank you. United States versus Zitlobufoka. Hernandez is now. And we'll have a judge. Cool. Did you have a question? I'm sorry. No, no, no. Thank you. Okay. We're in recess for five minutes. All right.
judges: Christensen, Fletcher, Gould